# MARVIN BECKMAN AND OTHERS v. ST. LOUIS COUNTY BOARD OF COMMISSIONERS AND OTHERS.

241 N. W. 2d 302.

April 9, 1976—No. 45345.

*Halverson, Watters, Bye & Downs, Don L. Bye,* and *Michael Q. Lynch,* for appellants.

*Knetsch & Bang* and *James J. Bang,* for respondent plaintiffs.

*Keith Brownell,* County Attorney, and *Michael R. Dean,* Assistant County Attorney, for respondent county board.

Heard before Sheran, C. J., and Rogosheske, Peterson, Kelly, and Yetka, JJ., and considered and decided by the court en banc.

ROGOSHESKE, JUSTICE.

Ninety-seven plaintiffs who are nonunion employees of St. Louis County commenced this alleged class action on behalf of themselves and all other similarly situated employees of the county. Defendants are the St. Louis County Board of Commissioners, the county auditor, and four affiliated locals of the American Federation of State, County and Municipal Employees Union. Defendant union, pursuant to Minn. St. 179.67 of the Public Employment Labor Relations Act (PELRA), is the certified "exclusive representative" for all St. Louis County employees in conducting contract negotiations and grievance procedures. Plaintiffs sought by this action to enjoin the future deductions by the county of a monthly "maintenance service fee" of $4 for the benefit of defendant union from the wages of nonunion county employees who had not personally authorized the deduction and to recover fees already collected by the county.

Shortly after defendants filed their answer, plaintiffs moved for summary judgment as to four counts of their complaint. After a hearing, the trial court, on February 16, 1973, denied plaintiffs' motion but ordered that all funds collected by the county from nonunion employees be held in trust. Upon rehearing, the court granted plaintiffs' motion for summary judgment, issued a permanent injunction against the future collection of the union "maintenance service fees" from nonunion county employees who had not authorized the deduction, and ordered the funds already in trust to be distributed to all such nonunion employees. Defendants' appeal from the order denying their motion

to dissolve the injunction and set aside the judgment entered essentially challenges the procedure followed by the trial court in reaching its decision.

During the pendency of the trial court proceedings, the legislature, by L. 1973, c. 635, § 10, amended Minn. St. 1971, § 179.65, subd. 2, of PELRA and expressly authorized an involuntary payroll deduction from the salary of nonunion employees of a "fair share" fee for services rendered to such members by the exclusive representative. Subsequent to the hearing of this appeal, we upheld the constitutionality of this amendment against a claim that it denied nonunion employees procedural due process. Robbinsdale Ed. Assn. v. Robbinsdale Fed. of Teachers, 307 Minn. 96, 239 N. W. 2d 437 (1976). In view of the "fair share" amendment, at oral argument plaintiffs conceded, as they must, that the injunction against future deductions must be regarded as discharged. The major controversy on this appeal is thus limited to the legality of the deductions from about 660 nonunion employees, including plaintiffs, from January through May 25, 1973, the effective date of the 1973 amendment.[1] The remaining issue concerns the acknowledged failure to follow required procedures in determining this action to be a class action. We hold that only the 97 named plaintiffs were entitled to summary judgment. Accordingly, we remand for modification of the judgment and for such further proceedings as plaintiffs may elect to pursue to establish their alleged right to maintain a class action for other employees similarly situated.

■ All material facts necessary to a decision in favor of the named plaintiffs on the merits are uncontroverted. Defendant union, as the certified statutory exclusive representative, and the county negotiated an agreement which, as amended, provided in part that the county would be required to collect a monthly union "maintenance service fee" of $4 from the paychecks of all nonunion county employees.[2] This monthly checkoff fee was,

---

[1] L. 1973, c. 635, § 38.

[2] Pursuant to Minn. St. 179.65, subd. 5, union county employees had $6 deducted each month from their checks to support union activities.

in accordance with the agreement, to be remitted to defendant union by the county. None of the 97 named plaintiffs had previously requested or authorized the monthly deduction. The trial court, upon the above facts alone, concluded that the case presented the purely legal issue of whether such service fee could lawfully be deducted from such employee's salary through a monthly payroll checkoff for the benefit of defendant union when the employee had not voluntarily requested the checkoff. A judgment granting all of plaintiffs' motion was entered.

While we agree with defendants that the procedure urged by plaintiffs and followed by the court in disposing of all issues raised on the merits leaves much to be desired, we are compelled to hold as a matter of law that the involuntary checkoff of a "service" or "fair share" fee prior to the 1973 "fair share" amendment was illegal. We are persuaded that it was illegal because it denied nonunion members their implied right not to pay employee organization dues or fees, which right was not abridged until the 1973 amendment to Minn. St. 1971, § 179.65, subd. 2. Such implied right is embodied in Minn. St. 1971, § 179.65, subd. 5, which provided in part:

"Public employees shall have the right to request and be allowed dues check off for the employee organization of their selection * * *."[3]

Surely the right of every public employee to request a dues checkoff carries with it by necessary implication the right to refuse such checkoff. Since imposition upon a nonmember employee of a "service fee" interferes with an employee's exercise of this right, under § 179.68, subd. 2(1), of PELRA, it constitutes an unfair labor practice by the employer. Even assuming, as defend-

---

[3] The language of this section, amended by L. 1973, c. 635, § 12, now reads: "Public employees shall have the right to request and be allowed dues check off for the exclusive representative. In the absence of an exclusive representative, public employees shall have the right to request and be allowed dues check off for the organization of their choice."

ant union argues, that had the court permitted a trial on the merits, it could have established factually that the service fee checkoff was negotiated in good faith, was reasonable in amount, was not coercive of union membership, and did not condition continued employment on payment of the fee, the involuntary checkoff fee would nevertheless interfere with a nonunion employee's right to refuse such a checkoff.

Under the rules governing statutory interpretation to ascertain legislative intent, and in view of the purpose and objective of PELRA, particularly those provisions affording protection to nonunion employees against unfair labor practices as discussed in Robbinsdale Ed. Assn. v. Robbinsdale Fed. of Teachers, *supra*, we are convinced that prior to passage of the "fair share" amendment the legislature did not intend involuntary checkoff of a service fee for the benefit of the exclusive representative to be the subject of collective bargaining. Rather, we perceive that the legislature, in recognition that such an involuntary checkoff was prohibited by the act, concluded that enactment of the "fair share" amendment was necessary to compel nonmembers to pay their pro rata share of the cost of negotiation and grievance services which the exclusive representative is under a statutory duty to perform for their benefit.[4] We hold therefore that the involuntary checkoff in question was not authorized and therefore was illegal.

■ Plaintiffs acknowledge and the reocrd makes clear that no attempt was made by them to comply with the requirements of Rule 23, Rules of Civil Procedure, governing class actions. The court, despite defendants' objections, presumably under the belief that the members of the class were readily ascertainable and the action well publicized, ignored the requirements of the rule.

---

[4] The adoption of an amendment raises a presumption that the legislature intended to make a change in the existing law. See, e. g., Honeymead Products Co. v. Aetna Cas. & Surety Co. 270 Minn. 147, 132 N. W. 2d 741 (1965); Western Union Tel. Co. v. Spaeth, 232 Minn. 128, 44 N. W. 2d 440 (1950).

This was error. Rule 23.03(1) requires that the court as soon as practicable after the commencement of an alleged class action must determine by order whether plaintiffs have a right to so maintain it. A class action cannot be maintained solely on the basis of the pleadings. See, Slezak v. Ousdigian, 260 Minn. 303, 110 N. W. 2d 1 (1961). Here, the trial court issued no order certifying and defining the class, and, more important, as defendants complain and the record demonstrates, failed to require notice to absent class members of the pendency of the action to enable any member of the class to elect to be excluded from the case. Since plaintiffs have alleged a class action and it appears that they may be able to establish a right to maintain it under the rules, they should, we believe, have the option on remand to pursue it.

Affirmed in part, reversed in part, and remanded without costs or disbursements to either party.