Edward BURNS, Plaintiff,

v.

Robert A. ERSEK, Jerald H. Maxwell, Larry A. Rasmusson, Arvid B. Evensvold, and Lurie, Eiger, Besikof & Co., Defendants.

No. 3–83 CIV 971.

United States District Court, D. Minnesota, Third Division.

May 8, 1984.

Stull, Stull & Brody by Robert Stull, New York City, and Jerome S. Rice, Law Offices by Diane Kotula, Minneapolis, Minn., for plaintiff.

Moss & Barnett by Thomas J. Shroyer, Minneapolis, Minn., for defendant Lurie, Eiger Besikof & Co.

## MEMORANDUM ORDER

ALSOP, District Judge.

■ This matter comes before the court upon defendant Lurie, Eiger, Besikof & Co.'s (Lurie Eiger) motion to dismiss the plaintiff's entire claim for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).

Defendant Lurie Eiger also moved to dismiss the state law claims for lack of jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) and (2), to dismiss the securities fraud, common law fraud and the Racketeer Influenced & Corrupt Organizations (RICO) Act claim for failure to plead fraud with particularity as required by Fed.R.Civ.P. 9(b) and to dismiss the class action allegations pursuant to Fed.R.Civ.P. 23(c)(1). The latter aspect of the motion was not directly briefed or argued. Since matters outside the pleadings were presented to and considered by the court, the motion will be treated as required by Fed.R.Civ.P. 12(b) as one for summary judgment pursuant to Fed.R.Civ.P. 56.

### I. The Complaint

Plaintiff claims to have purchased common stock of Med General, Inc. (Med General) and claims to represent a class of purchasers of Med General stock during the period April 24, 1978 and November 19, 1979. Med General was involved in the development, manufacture, and sale of surgical and medical products sold through dealers to health care providers. Plaintiff claims Med General also controlled a separate corporation, Pain Control Centers, Inc. (PCCI). The individual defendants are various officers and directors of Med General. Defendant Lurie Eiger, an accounting firm, allegedly audited Med General's financial statements for the years 1977 and 1978 and for the six months ended June 30, 1979 as well as quarterly periods commencing with the quarter ending March 31, 1978 and continuing through June 30, 1979. All of these statements, except the statement for the six month period, were allegedly disseminated by Med General to the public.

Plaintiff in Count I of his complaint alleges that the defendants violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated under that act. Specifically, plaintiff claims that Med General misrepresented its profits and sales at inflated levels by, among other things, falsely reporting shipments of unordered goods as sales, by re-

porting consignments as sales, by making sales to poor credit risks, by keeping quarters open to report later sales, and by granting excessively generous payment terms. *See* complaint ¶ 13, a–m. Defendant Lurie Eiger is alleged to have acted either with knowledge or recklessly in not examining Med General's financial statements for 1978 in accordance with generally accepted auditing standards (¶ 26, 27), in making misstatements in the financial statements contained in the 1978 Annual Report and not presenting such financials in accord with generally accepted accounting principles (¶ 31), in its knowledge that the financial statements in the Annual Reports and 10K's did not comply with doctrines of fair reporting (¶ 32), and in failing to declare in 1979 the "economic reality of Med General's financial condition". (¶ 30, 33).

Plaintiff in Count II alleges state common law fraud, deceit, and negligence claims based on the same activities under the doctrine of pendent jurisdiction. Count III alleges violations of the Minnesota Securities Act, Minn.Stat. §§ 80A.01 and 80A.03. Specifically, plaintiff claims Lurie Eiger knowingly misstated or omitted material facts in its opinions during the period and knowingly, recklessly, negligently or unreasonably failed to conduct a reasonable and proper audit in 1977, 1978 and June 1979. Finally, Count IV alleges that all defendants by the activities described above and by use of the United States mails engaged in a pattern of racketeering in violation of 18 U.S.C. §§ 1961–1968 and specifically § 1962(c).

## II. *Tolling*

Defendant contends that the class allegations asserted under § 10b in Count I are barred by the statute of limitations. Plaintiff claims that he was unable to discover the alleged securities fraud until Med General filed Chapter 11 bankruptcy in May, 1980. This suit was filed on August 11, 1983, more than three years after that date. It is well settled that the statute of limitations in 10b–5 actions is found by looking to the most closely analogous state statute. *See Johnson v. Railway Express Agency Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Morris v. Stifel, Nicolaus & Co., Inc.*, 600 F.2d 139, 140 (8th Cir.1979) (citing cases at 140); *Vanderboom v. Sexton*, 422 F.2d 1233, 1239 (8th Cir.), *cert. denied*, 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970); and *Bailey v. Piper Jaffray & Hopwood, Inc.*, 414 F.Supp. 475 (D.Minn.1976). There seems to be no dispute in this case and the court agrees that the appropriate statute of limitations is the three year provision found in the Minnesota Securities Act, Minn.Stat. § 80A.23 subd. 7. Section 80A.01 of that act is almost identical to Rule 10b–5. The period meets the "commonality of purpose and similarity of defenses" test used in this circuit. *See, e.g. Morris*, 600 F.2d 139.

Defendant concedes that the named plaintiff is not barred from bringing his individual § 10(b) suit, even though this suit was begun after the statute would have run, because the running of the period was tolled by the filing of a class action in the case of *Markewich v. Ersek*, Civ. 3–83–810. Briefly, that case was filed June 9, 1980 in the Southern District of New York. Mr. Markewich purported to represent in a § 10b action the same class of purchasers that Mr. Burns seeks to represent in this case. After Mr. Markewich's motion for class certification was denied, Curtis Delegard was granted leave to intervene. His motion for class certification was subsequently denied and Lloyd Anderson intervened. Mr. Anderson's motion for certification was also denied. (All were denied on the grounds that plaintiffs were not proper class representatives.) *Markewich* was then transferred to this court pursuant to 28 U.S.C. § 1404(a). Defendant concedes that the tolling doctrine of *American Pipe & Construction v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) applies to Mr. Burns' individual claim, provided that same claim was raised in the previous class action. *American Pipe* held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had

the suit been permitted to continue as a class action." *Id.* at 554, 94 S.Ct. at 766.

Defendants contend that this tolling doctrine grants to the individual members of a purported class action the right to either intervene in the pending class action or to file their own lawsuits. *Crown, Cork & Seal Company, Inc. v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). That doctrine does not, defendants say, permit an unnamed member of a class to commence his or her own *class* action upon the denial of class certification in the original class proceeding. Such an interpretation would permit perpetual tolling, prejudicing defendants and allowing use of extremely stale evidence.

■ Plaintiff contends that the tolling doctrine of *American Pipe* does apply to toll the claims of the putative class members in *Burns,* as well as the claims of the named plaintiff. Plaintiff claims that defendant's interpretation would frustrate the purposes of Fed.R.Civ.P. 23 and is not required by *American Pipe* or *Crown Cork.*

While there appears to be little law on the question, the court agrees with defendant that the tolling doctrine does not apply to the class allegations of the putative class members in *Burns. American Pipe* was a federal antitrust suit filed with only 11 days left to run on the applicable statute of limitations. After the district court had ruled that the suit could not proceed as a class action and after the statute would have run, a number of putative class members moved to intervene. The Supreme Court held that the motions to intervene were not time-barred. The court recognized that unless the statute of limitations was tolled by the filing of the class action, class members would not be able to rely on the existence of the class suit to protect their rights. Instead, they would be required to file motions to intervene or to join to protect themselves against possible denial of class certification and running of the statute. 414 U.S. at 553, 94 S.Ct. at 766. The purposes of the class action procedure—promotion of efficiency and economy

of litigation—would be frustrated. *Id.* Thus the court ruled that commencement of the class action suspended the applicable statute of limitations for the intervenors.

Following *American Pipe,* a split developed in the circuits as to whether the tolling doctrine applied only to putative class members who sought to intervene after denial of class certification or whether it extended to those class members who later filed individual actions. *See, e.g. Pavlak v. Church,* 681 F.2d 617 (9th Cir.1982) *vacated* —— U.S. ——, 103 S.Ct. 3529, 77 L.Ed.2d 1382 (1983) (vacated and remanded for consideration in light of *Crown Cork* ); *Stull v. Bayard,* 561 F.2d 429 (2d Cir.1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978) (limiting doctrine to intervenors). *But see Parker v. Crown Cork & Seal Co., Inc.,* 677 F.2d 391 (4th Cir.1982) (extending doctrine to all members).

In *Crown Cork & Seal Co., Inc. v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983), the Supreme Court resolved the question and ruled that filing of a class action tolled the statute as to all asserted members of the class, not just as to intervenors. *Id.* at 2395. The court noted that many of the same inefficiencies that concerned the Court in *American Pipe* would ensue if the tolling rule were limited to intervenors. A putative class member who feared denial of class certification would still have every incentive to file a separate action prior to expiration of his or her own period of limitations. *Id.* at 2396. The Court thus held that the statute remained tolled for all members of the putative class until class certification was denied. *Id.* at 2397.

The plaintiff in *Crown Cork,* unlike the plaintiff in this case, filed an individual action. The Court was therefore not presented with the question this court now faces. Nonetheless, the language and reasoning of *Crown Cork* imply that the Court would not extend the tolling doctrine to class allegations by putative class members in subsequent suits filed after denial of class certification. In its opening sen-

tence, the Court characterized the issue confronting it as "whether the filing of a class action tolls the applicable statute of limitations, and thus permits all members of the putative class to file *individual actions* in the event that class certification is denied .... *Id.* at 2393 (emphasis added). The Court described the split in the circuits by saying that two circuits had held that the tolling rule did not apply "to those who, like respondent, file *individual* actions." *Id.* at 2395 (emphasis added). In discussing the inefficiencies engendered by petitioner's view, the Court said that there were many reasons why a class member, after denial of class certification, "might prefer to bring an *individual suit* rather than intervene. The forum ... might be an inconvenient one ... or the class member *might not wish to share control over the litigation with other plaintiffs once the economies of a class action were no longer available." Id.* (emphasis added).

In reaching its decision, the Court observed that petitioner's view of *American Pipe* would be inconsistent with the Court's reliance on *American Pipe* in *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) where the Court required individual notice to absent class members so each could decide whether to opt out and preserve the opportunity to press his or her claim separately. The Court explained that a class member would be unable to press his or her claim separately if *American Pipe* were not applied. "Thus, the *Eisen* Court necessarily read *American Pipe* as we read it today, to apply to class members who choose to file *separate* suits," the Court said 103 S.Ct. at 2396 (emphasis added). Finally, in weighing the effect of its ruling on judicial economy the Court said that restricting the rule of *American Pipe* to intervenors might "reduce the number of *individual* lawsuits filed against a particular defendant" but would be counterbalanced by an increase in protective filings. The Court said that while a defendant might "prefer not to defend against *multiple actions in multiple forums,"* that was not an interest the

statutes of limitations were designed to protect. *Id.* at 2397 (emphasis added).

The Court in *Crown Cork,* then, clearly contemplated tolling for subsequent individual, separate lawsuits following denial of class certification. Nowhere did the Court indicate that it envisioned tolling for subsequent class claims. In fact, the logical implication of its reasoning process is that tolling would *not* apply to subsequent class allegations. The Court said that restricting tolling to intervenors might reduce the number of lawsuits filed; the corollary is that applying tolling to all putative class members would increase the number of lawsuits filed. That consequence, however, would only occur if the subsequently filed lawsuits consisted of a number of separate, individual suits. If the subsequent suit were a class action suit, as in the present case, it seems reasonable to conclude that the Court would have been less concerned about a potential increase in the number of lawsuits. Similarly, the Court's reference to the burden of multiple lawsuits in multiple forums also makes sense only if the subsequent suits are individual, not class actions. In addition, the Court's reliance on *Eisen* (requiring individual notice to absent class members allowing them to opt out to press a claim separately) is inconsistent with tolling for subsequent class actions.

Other courts that have considered the tolling doctrine, although not in the context of a subsequent class suit, seem to contemplate solely individual claims. *See, e.g. Susman v. Lincoln American Corp.,* 587 F.2d 866, 869 (7th Cir.1978) ("The statute of limitations on their *individual* causes of action may be tolled from the ... filing of the class action complaint." Emphasis added.); *Satterwhite v. City of Greenville,* 578 F.2d 987, 997 (5th Cir.1978) ("The statute ... is tolled for putative class members' *individual* claims ... and remains tolled as to those ... members who intervene or who file *individual* claims ...." Emphasis added.); *Green v. United States Steel Corp.,* 481 F.Supp. 295, 299 (E.D.Pa.1979) ("[T]he filing of a class action complaint tolls the statute ... on the filing of *indi-*

*vidual* claims .... If the class is later decertified, the statute begins to run again and the *individual class members must either file new law suits* or timely requests to intervene ...." Emphasis added.).

This court concludes that perpetual tolling of class claims by the filing of subsequent class action suits, as plaintiff Burns seeks here, is not a proper application of the *American Pipe* doctrine. Thus, the court concludes that plaintiff's class action allegations (as opposed to his individual allegation) in Count I of the complaint are barred by the statute of limitations. Accordingly, those claims will be dismissed.

III. *Pleading Fraud*

Defendant contends that plaintiff has not pled federal and state securities fraud, common law fraud, and fraud under RICO with the particularity required by Fed.R. Civ.P. 9(b). Plaintiff, from page 6 to page 47 of his "Memorandum of Law in Opposition to Motion of Defendant Lurie, Eiger to Dismiss" alleges that he has pled fraud with sufficient particularity and cites ample case authority.

■■■ The court agrees that Rule 9(b) must be read in conjunction with Fed.R. Civ.P. 8 calling for a short and plain statement of the facts and claims. The complaint here gives defendants fair notice of the claims asserted against them and the basic transactions upon which the claims are based. Given the complexity of modern securities litigation, the court is satisfied that the complaint is adequate under the standards of Fed.R.Civ.P. 8 and 9.

IV. *Minnesota Securities Act*

In Count III, plaintiff alleges violations of the Minnesota Securities Act, Minn.Stat. §§ 80A.01 and 80A.03. Defendant claims that these counts are barred by the three-year statute of limitations found in Minn. Stat. § 80A.23, subd. 7. That section provides that: "No person may commence an action under subdivision 2 more than three years after the occurrence of the act or transaction constituting the violation." (Subdivision 2 of § 80A.23 provides for civil liability on the part of any person who violates § 80A.01 or § 80A.03 in connection with the purchase or sale of any security.) Even assuming that plaintiff first learned of the alleged violations in May of 1980, defendant says that absent tolling this suit filed on August 11, 1983 comes too late.

■■■ Furthermore, defendant contends that the *American Pipe* doctrine does not apply to toll these blue sky law claims because those claims were not raised in the earlier class action. Justice Powell, in his concurrence in *Crown Cork & Seal Co., Inc.*, 462 U.S. at ___, 103 S.Ct. at 2398, admonished:

> The tolling rule of *American Pipe* is a generous one, inviting abuse. It preserves for class members a range of options pending a decision on class certification. The rule should not be read, however, as leaving a plaintiff free to raise *different or peripheral* claims following denial of class status.
>
> ... It is important to make certain ... that *American Pipe* is not abused by the assertion of *claims that differ from those raised in the original class suit.*

*Id.* (emphasis added).

A number of courts have noted that the tolling doctrine only applies to those claims that were raised in the first suit. The reason is simple: a defendant is put on notice by the initial class action only as to the claims that were raised in that action. Allowing tolling for new and different claims would be prejudicial to the defendant. *See, e.g., Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 467–68 n. 14, 95 S.Ct. 1716, 1723–24 n. 14, 44 L.Ed.2d 295 (1975) (The Court said, "Only where there is complete identity of the causes of action will the protections suggested ... necessarily exist ....", even though both claims were based on the same set of factual circumstances); and *In re Com. Oil/Tesoro Petroleum Corp. Sec. Lit.*, 467 F.Supp. 227, 259 (W.D.Tex.1979) (pendency of section 10(b) class action did not toll statute of limitations for individual's section 11 claim).

Plaintiff has not directly responded to defendants' contentions, but apparently claims that *American Pipe* tolls the statute for his blue sky law claims. The court does not agree. The better view and the weight of authority is that tolling applies only to causes of action raised in the first suit. Since plaintiff's Minnesota Security Act claims raised in Count III were not raised in the *Markewich* action, no tolling applies and the three-year statute of limitations has run. Accordingly, those claims will be dismissed. The court does not find it necessary to reach defendant's claim that plaintiff's complaint fails to state a cause of action under the substantive law of Minn.Stat. §§ 80A.01 and 80A.03. *See* "Memorandum of Law of Defendant Lurie, Eiger in Support of Motion to Dismiss" at 28–31.

## V. *RICO*

Plaintiff in Count IV alleges that all defendants by the activities described in Counts I through III and by use of the United States mails engaged in a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) [RICO]. Defendant moves to dismiss this count on the grounds that the claim is time-barred and that the complaint fails to state a cause of action under the substantive RICO law.

 It is well-settled that when the federal act contains no statute of limitations, the limitations period of the forum state is applied. The standard for choosing among several local periods is that the limitation period selected should be the "one which best effectuates the federal policy at issue". *Charney v. Thomas*, 372 F.2d 97, 100 (6th Cir.1967) (quoted with approval in *Vanderboom v. Sexton*, 422 F.2d 1233, 1237 (8th Cir.), *cert. denied*, 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970)). *See also Johnson v. Railway Express Agency Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44

L.Ed.2d 295 (1975) (employment discrimination) and cases cited at 462; *Morris v. Stifel, Nicolaus & Co., Inc.*, 600 F.2d 139, 141 (8th Cir.1979).

 In this case, there are two competing local statutes of limitation. One period is the three-year limitations period of the Minnesota Securities Act, found in Minn. Stat. § 80A.23, subd. 7. Defendant contends that this provision is appropriate because, while plaintiff has necessarily alleged two acts of predicate liability in his effort to state a RICO claim, this case is primarily a securities fraud case. Mail fraud, in contrast, is referred to in only one sentence of the 37-page complaint. Defendant contends that since the action under RICO is at heart an action for securities fraud of the type prohibited by § 10(b) and Rule 10b–5, the same statute of limitations should be applied to plaintiff's RICO claim as to his § 10(b) claim. That statute is Minn.Stat. § 80A.23, subd. 7 and its three-year period, defendant argues, bars plaintiff's claim.[1] Furthermore, for the reasons discussed in Part IV *supra, American Pipe* does not apply to toll the running of the statute on plaintiff's RICO claim because such claims were not raised in the previous class action.

The other state limitations period that could be applied is the general fraud provision found in Minn.Stat. § 541.05, subd. 1(6). That section gives a party six years from the date of discovery of facts constituting the fraud to commence an action based on fraud. Plaintiff argues that this statute best effectuates the policies underlying RICO. Plaintiff claims that § 80A.23, subd. 7 deals mainly with registration of securities, not securities fraud, and is therefore inappropriate and claims that a longer limitations period is needed to protect adequately rights under RICO, citing case authority.

---

**1.** Since the other predicate RICO act, mail fraud, is alleged to have occurred when the securities fraud was conducted, the three years would begin to run from the same time, here when the securities fraud was allegedly discovered in May of 1980. In a different situation

plaintiff might have more than 3 years from discovery of the securities fraud since his cause of action for RICO would not accrue until at least two predicate acts had occurred within a ten-year period and there could be a time lag between those two acts.

The court finds that Minn.Stat. § 80A.23, subd. 7 provides the statute of limitations that best effectuates the policies of RICO. The cases cited by plaintiff are inapposite. It is true that the case of *State Farm Fire & Casualty Co. v. Estate of Caton,* 540 F.Supp. 673 (N.D.Ind.1982) found the most analogous statute for plaintiff's RICO claims to be the statute for claims based on common law fraud. That case, however, involved an alleged arson-for-profit scheme. The district court concluded that the cause of action sounded in the common law tort of fraud. The court therefore applied the six-year limitation for relief against frauds, rejecting defendant's argument that a RICO claim was more analogous to a claim for forfeiture of a penalty and that the two-year Indiana limit for statutory penalties should have been applied. The case is obviously distinguishable from that at bar.

The second case that plaintiff relies on is also not on point. Plaintiff says the court in *Bache Halsey Stuart Shields v. Tracy Collins Bank,* 558 F.Supp. 1042, 1046 (D.Utah 1983) "suggested that the federal five-year criminal statute of limitations should be tacked onto civil RICO actions because of the need for a longer limitations period." *See* "Plaintiff's Memorandum of Law in Opposition to Motion" at 65–66. Plaintiff says that a three-year securities act statute of limitations is not long enough for RICO claims, quoting the court as follows: "Thus, although the 10b–5 action is lost after three years, it is actionable under RICO for ten years." *Id.* at 66.

The court does not agree with this interpretation of the authority. First, the *Bache* court did not recommend that a five-year criminal statute be tacked onto civil RICO actions "because of the need for a longer limitations period" or for any other reason. Second, the context of the court's discussion shows that the court was concerned that the factual basis of the alleged predicate acts of racketeering be set out with sufficient particularity. The court said, "The need for specificity is intensified by the broad range of the Federal Racketeering Act." *Id.* at 1076. The court noted that RICO in its substantive provisions requires only that the acts be committed within 10 years of each other. While a 10b–5 action would have to be brought within three years of the alleged violation in the forum state, after that time had run the challenged activity could be coupled with an allegation of another alleged act of racketeering to form the basis of a RICO claim. "Thus, although the 10b–5 action is lost after three years, it is actionable under RICO for ten years," the court said. *Id.* The court warned that without an insistence on pleading with particularity, the Act was "virtually limitless in its application". *Id.* The *Bache* court did not say or imply that the statute of limitations to be applied to RICO actions should be 10 years or should not be three years; it merely pointed out that the cause of action, as defined by RICO, could accrue over a ten-year period.

Neither party has referred the court to some relevant recent case authority. In *D'Iorio v. Adonizio,* 554 F.Supp. 222 (M.D. Pa.1982), plaintiff brought a RICO claim with five pendent state claims for wrongful appropriation of business opportunities, breach of fiduciary duties, civil conspiracy, fraudulent concealment, and breach of contract. The court noted that mail fraud was the most significant of the "pattern of racketeering activity" (or predicate acts) pled. In addition, wire fraud was pled. The defendant argued for application of Pennsylvania's one-year limitation for an action for a civil penalty or, alternatively, for the two-year limit on the initiation of a prosecution for corrupt organizations. Plaintiff wanted the six-year limitation period for fraud applied. The court held that an action for fraud was the state cause of action most analogous to the RICO claims because both mail and wire fraud depended upon the existence of a scheme or artifice to defraud, *id.* at 232, and applied the six-year period.

Subsequently, another court in that circuit in *Eisenberg v. Gagnon,* 564 F.Supp. 1347, 1354 (E.D.Pa.1983) relied on *D'Iorio* in a case pleading securities, mail and wire fraud. The court said that the count was

capable of being sustained solely on the mail and wire fraud allegations and thus the court would apply the six-year common law fraud statute that plaintiffs requested as opposed to the three-year securities fraud statute that defendants requested.

Finally in *Kirschner v. Cable/Tel. Corp.*, 576 F.Supp. 234 (E.D.Pa.1983) a court in that same district considered a RICO claim based on alleged wire, mail, and securities fraud. Defendants there requested use of a Pennsylvania two-year common law fraud statute or alternatively a securities fraud statute, civil penalties statute or injury to property statute. Plaintiff agreed that the most analogous state statute was one for common law fraud, but contended the period would be six years. The court, citing *Eisenberg, D'Iorio*, and *State Farm Fire & Casualty Co.*, said that, "when, as here, a RICO claim is based on allegations of wire, mail, and securities fraud, the most analogous state claim is one for common law fraud, since both claims depend upon the existence of a scheme or artifice to defraud." *Kirschner*, 576 F.Supp. at 241. The court then found it unnecessary to determine whether a two or six-year period applied since plaintiffs' complaint was timely under either period.

The court finds that the Pennsylvania cases are distinguishable from this case. Only *Eisenberg* and *Kirschner* involved alleged securities fraud. By the time the motions in those cases were decided, authority existed in the third circuit—at least at the district court level—for the proposition that a RICO case alleging mail and wire fraud required application of the common law fraud statute. *Eisenberg* effectively ignored the securities aspect of its case in following that authority and in *Kirschner* the parties agreed that the common law fraud statute applied.

No similar authority in the eighth circuit limits this court. Both the *State Farm Fire & Casualty Co.* court and the court in *D'Iorio* considered the underlying nature of the significant predicate acts in deciding which state limitations period to apply. In *State Farm*, the court found that the ar-son-for-profit scheme sounded in common law fraud and applied the period for relief against frauds. Similarly, in *D'Iorio* the court said that mail and wire fraud depended upon the existence of a scheme or artifice to defraud and applied the common law fraud statute. In this case, both predicate acts—mail fraud and securities fraud—depend upon a scheme to defraud; the securities fraud alleged is merely a specific type of scheme to defraud. As the *D'Iorio* court did, this court has looked to the allegations of the complaint to determine that securities fraud is the significant predicate act. Only one general paragraph in the entire 37-page complaint refers to mail fraud. In these specific circumstances, it is clear that the RICO claim is basically one for securities fraud. The more specific three-year securities law fraud limitation, instead of the more general six-year fraud limitation, will be applied.

Plaintiff's contention that the securities law fraud statute, Minn.Stat. § 80A.23 subd. 7 "deals primarily with the registration of securities and any fraud is a secondary consideration at best", "Plaintiff's Memorandum" at 65, is simply wrong. Minn.Stat. § 80A.23 subd. 7 provides a limitation period for actions commenced under both subdivision one and two of § 80A.23. Subdivision two provides for civil liability of persons who violate § 80A.01, .02, and .03—the antifraud sections of the Minnesota Securities Act. Section 80A.01, in fact, is almost identical to the language of Rule 10b–5. Subd. 7 of § 80A.23 clearly establishes a limitations period for securities law fraud.

Since the court finds that plaintiff's RICO claim is barred by the three-year limitation period of Minn.Stat. § 80A.23 subd. 7, the court does not find it necessary to reach defendant's claim that plaintiff's complaint fails to state a cause of action under the substantive RICO law. *See* "Memorandum of Law of Defendant Lurie, Eiger" at 15–20.

VI. *Conclusion*

A motion for summary judgment is an appropriate method for raising a

**846**

statute of limitations defense. *Kern v. Tri State Ins. Co.*, 386 F.2d 754, 756–57 (8th Cir.1968). The moving party bears the burden of establishing that there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). A motion for summary judgment should be sustained if the pleadings and discovery materials, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Butler v. MFA Life Insurance Company*, 591 F.2d 448, 451 (8th Cir.1979). The court has concluded that defendant has met its burden in that regard. While issues of law abound, there are no factual issues on many of the points defendant raises.

Specifically, the court has concluded that the *American Pipe* doctrine does not toll the statute of limitations for plaintiff's class § 10(b) allegations in Count I and defendant is entitled to summary judgment on those claims. The statute is tolled, however, for plaintiff's individual § 10(b) allegations in Count I and defendant is not entitled to summary judgment on those claims. The court has also concluded that plaintiff has pled fraud with sufficient particularity and defendant is not entitled to summary judgment on that basis. The court will retain jurisdiction over the pendent claims for common law fraud, deceit and negligence in Count II.

The court has also concluded that plaintiff's claims under the Minnesota Securities Act are barred by the three-year statute of limitations of Minn.Stat. § 80A.23 subd. 7 and that those claims are not tolled. Thus, defendant is entitled to summary judgment on the Minnesota Securities Act claims in Count III. Finally, the court has concluded that the applicable statute of limitations for plaintiff's RICO cause of action based on securities law fraud is also Minn.Stat. § 80A.23 subd. 7 and those claims are also not tolled. Defendant is therefore entitled to summary judgment on Count IV.

Upon the foregoing,

IT IS ORDERED that defendant's motion to dismiss Counts III and IV and the class allegations of Count I, treated as a motion for summary judgment, be and hereby is granted. Those counts are dismissed with prejudice.

IT IS FURTHER ORDERED that defendant's motion to dismiss the individual allegations of Count I, treated as a motion for summary judgment, be and hereby is denied.

IT IS FINALLY ORDERED that defendant's motion to dismiss Count II, treated as a motion for summary judgment, be and hereby is in all things denied.