**Russell BARTLETT, et al., Appellants,**

**Walter T. Miller, Defendant,**

v.

**MILLER AND SCHROEDER MUNICIPALS, INC., et al., Edward C. Lemke, et al., Paul W. Price, Warren J. Peterson and International Organics, Inc., Respondents.**

**No. CX–84–466.**

Court of Appeals of Minnesota.

Sept. 18, 1984.

Thomas V. Firth, Minneapolis, for appellants.

W. Michael Drake, Judith A. Rogosheske, Drake & Rogosheske, P.A., Minneapolis, for Miller and Schroeder Municipals.

Paul G. Neimann, Wiese & Cox, Ltd., Minneapolis, for Lemke.

Paul W. Price, Greensboro, N.C., pro se.

Warren J. Peterson, St. Louis, Mo., pro se.

Heard, considered and decided by POPOVICH, C.J., and PARKER and CRIPPEN, JJ.

## OPINION

POPOVICH, Chief Judge.

This appeal is from a judgment of dismissal of appellants' action based upon the running of the statute of limitations. Appellants are holders of industrial development revenue bonds issued by the Seaway Port Authority of Duluth (SPAD), underwritten by respondent Miller & Schroeder, and used to finance the construction of a malic acid plant. Following the default of the tenant of that facility, the plant was sold below cost in September 1976.

A class action suit was brought on behalf of the bondholders in federal district court in May 1976, but class certification was denied in May 1977. A similar class action was then brought in state court in November 1977. The trial court, distinguishing *American Pipe and Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974), ruled that the statute of limitations was not tolled during this second class action, and that the six-year statutory period had expired when this action was brought on July 27, 1983. We affirm.

## FACTS

Some of the facts of this case are set out in our opinion in the related case of *Whitehill v. Seaway Port Authority of Duluth,* 349 N.W.2d 313 (Minn.Ct.App.1984).

The malic acid plant was to be leased by International Organics, Inc. (IOI), a newly-formed company owned by four individuals, respondents Edward Lemke and Robert Mack, and Paul Price and Warren Peterson. In addition to the revenue bonds, financing for construction of the facility was to come from equity in IOI, a loan from a local development agency, and a loan from the United States Economic Development Agency (EDA).

Sale of the $1,585,000 in revenue bonds was completed in July 1973. Following the Arab oil embargo in the fall of 1973, however, prospects for the production of malic acid from benzene, a petroleum by-product, changed drastically.

In July 1974, IOI informed SPAD that it would be financially unable to complete the project, due to cost overruns in construction and the rising price of benzene. A letter to this effect was sent to SPAD by respondent Lemke, the president of IOI. Respondents Price and Peterson, however, wanted IOI to continue with the project. Lemke and Mack resigned their positions with IOI in August 1974, and the project continued. IOI, however, was unable to obtain the additional capital required to complete the plant and put it in operation. The EDA loan was available only upon completion of construction, contrary to representations allegedly made by respondents that it would be unconditionally available.

The revenue bonds were to be paid from rental payments made by IOI, but IOI never made any rental payments. SPAD took possession of the unfinished plant in December 1974 and began a search for other buyers or tenants.

A Reserve Fund established by the terms of the Bond Resolution was sufficient to make the interest payments due the bondholders until June 1, 1976, when the first default occurred. The plant was sold, at a price substantially below cost, in September 1976.

On May 19, 1976, Miller & Schroeder filed a class action suit in federal district court against SPAD, IOI, its four shareholders, and the First National Bank of Duluth, alleging the following: federal securities law fraud, state securities law fraud, common law fraud, negligence and

breach of fiduciary duty, and breach of contract. Shortly thereafter, one of the bondholders (not a party here), Daisy Whitehill, moved to intervene as a plaintiff, to have Miller & Schroeder realigned as a defendant, and to have the bondholders certified as a class with her as its representative. The motions for intervention and realignment were granted, and Whitehill filed her complaint.

The federal district court, however, denied the motion for class certification on May 10, 1977. The court held, in the federal securities law claim, individual questions of law and fact predominated over common questions. The pendent state claims were also denied certification. After a motion for reconsideration of its decision, the district court on June 29, 1977 again rejected certification, and directed all bondholders be notified of the denial of the class action status, and be given 60 days to intervene. The bondholders were also advised they should seek legal counsel if they felt they had a claim. It appears no bondholders moved to intervene, the federal action lapsed, and was later dismissed for lack of prosecution in November 1980.

Whitehill then brought a class action in state court on November 8, 1977. Initially venued in Hennepin County, this action named SPAD and Miller & Schroeder as defendants. The original complaint alleged breach of contract and fiduciary duty by both SPAD and Miller & Schroeder, common law fraud, and failure to register securities in violation of state law.

Plaintiff Whitehill, in response to motions for dismissal made by both SPAD and Miller & Schroeder, wrote to all bondholders notifying them of the status of the class action litigation. This letter, which is undated, requested additional written concurrences to the litigation from the bondholders. Whitehill, who had already obtained concurrences from holders of 25% of the total principal of the bonds as required by Section 4–11 of the Bond Resolution, was seeking additional concurrences in response to SPAD's claim that a 51% concur-

rence was required. SPAD subsequently settled out of the suit.

Miller & Schroeder moved to strike the class action allegations based on collateral estoppel due to denial of certification in federal district court. On July 3, 1978, the state trial court granted this motion with respect to the common law fraud and non-registration claims, holding that class certification on these pendent state claims had been decided on the merits in the federal action. The federal court's orders were found to be ambiguous as to whether denial on the other claims was on the merits or under principles of pendent jurisdiction, so these were allowed to stand as class action claims. The bondholders were not formally notified of this order, but were informally notified according to appellants' counsel.

Following this order, Whitehill amended her complaint adding the previously-omitted federal defendants, deleting the non-registration claim, and removing the common law fraud claim as a class action allegation. This amendment appears to have been intended to preserve Whitehill's action as a class action, following the state trial court's order. There were subsequent amendments of the complaint, but no other significant action until a motion to consolidate with the files of other bondholders, including all but one of appellants here, in October 1981. This motion was denied in March 1982.

Miller & Schroeder thereafter moved to strike the class action allegations of the Whitehill complaint. The trial court granted this motion in January 1983.

Appellants then brought the present action on July 27, 1983 in St. Louis County. Appellants' attorney has been involved in the case since the *Whitehill* action in federal court.

## ISSUE

Is the statute of limitations tolled by the commencement of a class action in state court where the same class has been denied certification in federal court?

## ANALYSIS

■ 1. The filing of a class action tolls the running of the statute of limitations as to all asserted members of the class who would have been parties had the action been certified as a class action. *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 552, 94 S.Ct. 756, 765, 38 L.Ed.2d 713 (1974). Respondents, however, contend there is no precedent for suspending the statute during a second class action brought after a denial of certification. They claim a second tolling would be an abuse of the liberal tolling rule of *American Pipe*.

The trial court noted the rule of *American Pipe*, but viewed tolling as an equitable remedy. It set out its reasons for denying tolling in this case as follows:

> The facts of *Bartlett et al* are unique for several reasons. First, there has already been one period of tolling for the plaintiffs. This period extended from May 19, 1976 to May 10, 1977. Granting the plaintiffs a second tolling period would, in effect, give them a 'second shot' at raising claims and issues which have already been decided. Second, plaintiffs have had clear notice and an opportunity to intervene pursuant to the Order of Honorable Judge Larson. Third, plaintiffs' claims are essentially the same claims which have previously been raised in this decade-long action. At this time, defendants have been prejudiced by multiple actions arising out of stale claims. There is a particular prejudice to the defendants in countering claims of oral misrepresentations allegedly made a decade ago. Fourth, granting another period of tolling would be a burden on the Court and inconsistent with the interests of judicial economy. Furthermore, plaintiffs have not met their burden of proving tolling would be appropriate.

■ 2. As a general rule, the statute of limitations does not begin to run until the plaintiff has incurred injury which is compensable as damages. *Bonhiver v. Graff*, 311 Minn. 111, 117, 248 N.W.2d 291, 296

(1976). The six year statute of limitations is applicable to appellants' claims. Minn. Stat. § 541.05, subd. 1(1) (1976). Those causes of action did not accrue until June 1, 1976, when the first default in payment occurred, or September 1976, when sale of the plant below cost foreclosed any possibility of full repayment of bondholders. Before either date, however, the *Whitehill* federal class action had commenced, tolling the statute of limitations under *American Pipe*.

■ Tolling principles are a creature of equity, *Wood v. Combustion Engineering, Inc.*, 643 F.2d 339, 347 (5th Cir.1981), and the right to a tolling of the statute of limitations accrues only when the interests of justice require it. *See Burnett v. New York Central Railroad Co.*, 380 U.S. 424, 428, 85 S.Ct. 1050, 1054, 13 L.Ed.2d 941 (1965). The tolling principle of *American Pipe*, however, is based on an accommodation of the policies served by class action litigation with those served by statutes of limitation. *See American Pipe*, 414 U.S. at 550–51, 94 S.Ct. at 764–65. The rule that the filing of a class action tolls the statute is the "rule most consistent with federal class action procedure." 414 U.S. at 554, 94 S.Ct. at 766.

3. We note the question whether the statute was tolled during the *Whitehill* federal class action was not determined in that case and is not determinative here. Accordingly, the issue is not whether there should be a "second tolling" of the statute, but whether, on the facts of this case, the statute should be tolled during the pendency of the second class action suit.

The class action tolling rule of *American Pipe* is based upon an accommodation of the policies served by statutes of limitation and by class action litigation. Statutes of limitation serve a general purpose of repose, the interest of both the defendant and society in freedom from stale claims. *See Bachertz v. Hayes-Lucas Lumber Co.*, 201 Minn. 171, 176, 275 N.W. 694, 697 (1937). The statutes also serve to ensure that defendants are given notice of claims so that they may preserve relevant evi-

dence. *See Burnett v. New York Central Railroad Co.*, 380 U.S. at 428, 85 S.Ct. at 1054.

Class actions, on the other hand, promote judicial economy by consolidating individual claims, preventing inconsistent adjudications, and, at the same time, are governed by rules ensuring fairness to individual class members, such as the requirement of notice, and the opportunity to opt out of the class. *See Rathbun v. W.T. Grant Co.*, 300 Minn. 223, 240, 219 N.W.2d 641, 652 (1974).

As the Supreme Court noted in *American Pipe*, the purposes of the statute of limitations are served when the class action is begun and the defendants are notified:

> not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment.

414 U.S. at 555, 94 S.Ct. at 767.

If the statute is not tolled while the action continues as a class action, however, the purposes of class action litigation are not served:

> To hold to the contrary would frustrate the principal function of a class suit, because then the sole means by which members of the class could assure their participation in the judgment if notice of the class suit did not reach them until after the running of the limitation period would be to file earlier individual motions to join or intervene as parties—precisely the multiplicity of activity which Rule 23 was designed to avoid * * *.

414 U.S. at 551, 94 S.Ct. at 765. The *American Pipe* court held, therefore, that the statute must be tolled even as to those asserted class members who were unaware of the class action and could not show actual reliance on that proceeding to preserve their claims. 414 U.S. at 552, 94 S.Ct. at 765.

4. The court is required to determine, "[a]s soon as practicable after the commencement of an action brought as a class action," whether it can be maintained as one. Minn.R.Civ.P. 23.03(1). The rule further requires the court to direct "the best notice practicable under the circumstances" to class members. Minn.R.Civ.P. 23.03(2). There is no requirement of notice prior to certification of the action as a class action.

Here the bondholders received notice, as directed by the federal district court's order dated June 29, 1977, that certification of the *Whitehill* action as a class action was denied, they could seek intervention in the *Whitehill* action within 60 days, and should seek counsel if they felt they had a claim. None of the bondholders sought intervention, but it appears from the record that some brought individual actions in other jurisdictions.

As of June 29, 1977, therefore, the primary purpose underlying the *American Pipe* rule of class action tolling, the avoidance of a multiplicity of actions, had evaporated, the putative class members having been notified that they should proceed on their own. Although a second *Whitehill* class action was brought in state court in November 1977, and the bondholders received notice of this action, the class action was then only one of the options available to the bondholders, including individual actions. We do not believe the interests of judicial economy and the other policies served by class action litigation justified an additional tolling of the statute. This is particularly the case as the bondholders were then apprised of the state trial court's partial denial of certification, again putting the bondholders on notice that they should proceed on their own, at least as to two of their claims. This result is consistent with the conclusion reached in *Burns v. Ersek*, 591 F.Supp. 837 (D.Minn.1984) (memorandum order), in which the federal district court said:

> This court concludes that perpetual tolling of class claims by the filing of subsequent class action suits * * * is not a proper application of the *American Pipe* doctrine.

*Id.*, at 842.

The *Whitehill* complaint was amended by deletion of the common law fraud and

non-registration claims, and the action continued to be asserted as a class action for 4½ years. The plaintiff in that action should have sought an early determination of the certification issue. The trial court may also have had an independent obligation to make a timely determination on its own motion. *See Beckman v. St. Louis County Board of Commissioners,* 308 Minn. 129, 134, 241 N.W.2d 302, 305 (1976). It is clear, however, that the bondholders, including appellants, had no right to rely on the action to preserve their claims against the running of the statute of limitations. This point should have been underscored when the trial court on March 1, 1982 denied the plaintiff's motion to consolidate the *Whitehill* file with those of other bondholders, including appellants here.

5. The burden is on the plaintiff seeking relief from the running of the statute of limitations to show that the statute should be tolled. *Wollman v. Gross,* 637 F.2d 544, 549 (8th Cir.1980), *cert. denied,* 454 U.S. 893, 102 S.Ct. 389, 70 L.Ed.2d 207 (1981). In this case, appellants must show not only that tolling is consistent with the purposes of the statute of limitations, but that there is a "significant underlying * * policy that would have conflicted with a decision not to suspend the running of the statute." *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 466, 95 S.Ct. 1716, 1723, 44 L.Ed.2d 295 (1975). Since the class action policies identified in *American Pipe* do not require tolling under the facts of this case, that case is not controlling. *See Pavlak v. Church,* 681 F.2d 617, 621 (9th Cir.1982) (*American Pipe* has no application where the policies explaining the case do not apply). Appellants have presented no other policy arguments applicable to class action litigation which would justify tolling under the circumstances of this case.

## DECISION

Where a class action has been denied certification and class members notified of the denial and the necessity of taking independent action to preserve their claims, the policies identified in *American Pipe* do not require the tolling of the statute of limitations upon the filing of a second class action. Appellants have not met the burden of showing that the statute should be tolled.

Affirmed.