Julie **DAHER**, Plaintiff,

v.

**G.D. SEARLE & CO. and Monsanto Company,** Defendants.

Civ. No. 3–88–0099.

United States District Court, D. Minnesota, Third Division.

Sept. 7, 1988.

As Corrected Sept. 9, 1988.

Michael V. Ciresi, Roger P. Brosnahan, David L. Suggs, Roberta Walburn of Robins, Kaplan, Miller & Ciresi, Minneapolis, Minn., for Julie Daher.

Gregory Wilmes of Fruth & Anthony, Minneapolis, Minn., and Jerold Solovy, Joan M. Hall, Laura A. Kaster and Marquerite M. Tompkins of Jenner & Block, Chicago, Ill., for Monsanto.

Michael Berens and Madge Thorsen of Oppenheimer, Wolff & Donnelly, Minneapolis, Minn., for G.D. Searle & Co.

## MEMORANDUM AND ORDER

RENNER, District Judge.

Before the Court is defendant Monsanto Company's ("Monsanto") motion to dismiss this action for lack of personal jurisdiction, or alternatively, dismiss Count II for failure to plead fraud with particularity. These motions were argued before this Court on May 10, 1988 and taken under advisement.

Plaintiff initially brought this action against Monsanto and G.D. Searle and Co. ("Searle") on February 17, 1988. Plaintiff seeks compensatory and punitive damages against both defendants for injuries she suffered as a result of using a Cu–7 IUD between October 1984 and October 1987.

Plaintiff alleges that Searle—the manufacturer of the Cu–7, is liable under theories of strict liability, negligence, breach of warranties, and misrepresentation. Plaintiff further alleges that Monsanto, the parent corporation of Searle as of October, 1985 [1], is liable to plaintiff for affirmative acts of negligence, breach of express and implied warranties and misrepresentation which Monsanto carried out in concert with Searle. At this time, plaintiff is not seeking damages based on derivative liability as a result of Monsanto's 100% ownership of

---

1. Monsanto acquired 100% ownership of Searle in October, 1985; one year after plaintiff received her Cu–7 and two years prior to the time it was removed from her uterus.

Searle stock. This action represents the first time a Minnesota plaintiff has named Monsanto as a co-defendant in Cu–7 litigation.

Plaintiff specifically alleges that Monsanto, acting independently but in concert with Searle, misrepresented the safety of the Cu–7 to physicians and the general public, including plaintiff and her doctor. These alleged misrepresentations serve as the basis for all of plaintiff's claims against Monsanto. Plaintiff further asserts that Monsanto fraudulently concealed dangers associated with the Cu–7 from the time it acquired Searle to, and following, the time plaintiff's Cu–7 was removed in October 1987.

Monsanto argues that the action against it should be dismissed for lack of personal jurisdiction because Monsanto has no contacts with this forum or with the events at issue in this litigation. Alternatively, Monsanto argues that Count II—a Count alleging Fraud—should be dismissed pursuant to Fed.R.Civ.P. 9(b) because plaintiff did not plead fraud with particularity as required by that rule.

ANALYSIS:

■ To find personal jurisdiction in a diversity case, the Court must find that such jurisdiction: (1) comports with constitutional due process requirements and (2) that service of process is authorized by the Minnesota long-arm statute, Minn.Stat. § 543.19. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). With respect to the first requirement, the Minnesota Supreme Court has upheld the constitutional validity of the Minnesota long-arm statute noting that it is intended to "have the maximum extraterritorial effect allowed under the due process clause of the federal constitution." *Rostad v. On–Deck, Inc.*, 372 N.W. 2d 717, 719 (Minn.1985) *cert. denied sub nom. On–Deck, Inc. v. Rostad*, 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985).

Plaintiff asserts that two separate provisions of the Minnesota long-arm statute provide adequate grounds for this Court to have personal jurisdiction over Monsanto in this personal injury/product liability action.

First, plaintiff cites § 543.19(1)(b) which authorizes personal jurisdiction over a defendant who transacts business in Minnesota. Second, plaintiff cites § 543.19(1)(d) which permits the courts of this State to exercise jurisdiction over a non-resident corporation who "commits any act outside Minnesota causing injury or property damage in Minnesota." For reasons stated below, this court finds sufficient jurisdiction under § 543.19(1)(d) for plaintiff to maintain an action against Monsanto in this forum. Accordingly, this Court need not determine if section 543.19(1)(b) is also applicable.

Section 543.19(1)(d) provides, in part, that

... a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over any foreign corporation or any nonresident individual ... if, in person or through an agent, the foreign corporation or non resident individual: ... (d) Commits any acts outside Minnesota causing injury or property damage in Minnesota....

■ Plaintiff has the threshold burden to make a *prima facie* showing that a court has jurisdiction over a nonresident defendant. *Dent–Air, Inc. v. Beech Mountain Air Service, Inc.*, 332 N.W.2d 904, 906–907 (Minn.1983). However, "at the pre-trial stage ... plaintiff's allegations and supporting evidence are to be taken as true." *Id.* at 907, n. 1 *citing Hardrives, Inc. v. City of LaCrosse, Wisconsin*, 307 Minn. 290, 293, 240 N.W.2d 814, 816 (1976). *See also Block Industries v. DHJ Industries, Inc.*, 495 F.2d 256, 260 (8th Cir.1974).

Monsanto does not dispute that plaintiff is a Minnesota resident or that her alleged injuries, if caused by the Cu–7, occurred in this jurisdiction. Rather, Monsanto argues that § 543.19(1)(d) is inapplicable because plaintiff's complaint fails to identify any act by Monsanto that caused plaintiff's injury.

To support its argument, Monsanto notes that the gravamen of the complaint against Monsanto is plaintiff's allegation that:

*At and after* the time the Cu–7 was removed from the market defendants

made false public statements that the Cu–7 was safe.

Monsanto's Brief, p. 7 *quoting* Complaint, paragraph 6. (emphasis added)

Monsanto then notes that its only public statement about the Cu–7 occurred on October 8, 1985—four months prior to the Cu–7 discontinuance.[2] Monsanto further asserts that it issued no other public statements concerning the Cu–7 and therefore, there are no actions of fraud or misrepresentation as alleged by the complaint.

 The mere fact that Monsanto did not issue further press releases, however, is not determinative as to whether it acted in concert with Searle in misrepresenting the safety of the Cu–7 to the public. Rather, the Court, viewing the record before it, must look at Monsanto's overall involvement regarding the Cu–7 before a determination can be made as to whether plaintiff has made a *prima facie* showing of personal jurisdiction. Moreover, as noted above, plaintiff need not make a *prima facie* showing of jurisdiction on the pleading alone. Rather, the Court must examine all supporting affidavits and exhibits before it can determine whether plaintiff has successfully met its burden. *Block Industries*, 495 F.2d at 260.

 Here, plaintiff has filed several exhibits in support of her claims that Monsanto, acting independently but in concert with Searle, misrepresented the safety of the Cu–7 at, and following, the time the Cu–7 was withdrawn from the United States market. The Court, viewing these exhibits in a light most favorable to plaintiff for the limited purpose of this motion, find that plaintiff has met its burden.

In making this finding, the Court considered several documents, including Plaintiff's Memorandum Exhibits 4, 21 and 24. Exhibit 4 is a March 14, 1985 memorandum, written 6½ months before Monsanto acquired Searle, in which two senior scientists at Monsanto discuss several ways in which IUDs "cause problems". This exhib-

it, viewed in plaintiff's favor, shows Monsanto's awareness of possible health problems related to the Cu–7.

The next exhibit, Plaintiff's Memorandum Exhibit 21, appears to be an internal Searle document prepared in anticipation of press inquires about the Cu–7's removal from the marketplace. The document notes that Searle's decision to withdraw the Cu–7 from the market was an economic decision made after discussion with Monsanto. Furthermore, the document makes no mention of the possible health problems cited in exhibit 4, but rather, stresses the safety and efficacy of the Cu–7.

The final document, Plaintiff's Exhibit 24, is a plan for the sequence of events to be undertaken in conjunction with the announcement to withdraw the Cu–7 from the marketplace. This document shows that both Searle and Monsanto employees were assigned responsibilities in conjunction with that announcement.

These documents, viewed in a light most favorable to plaintiff, raise material facts as to whether Monsanto, working in conjunction with Searle, misrepresented the safety of the Cu–7 at the time the Cu–7 was removed from the market in January, 1986. Because such representations are at the heart of plaintiff's Complaint, this Court finds that it has personal jurisdiction over Monsanto in this action.

Next, Monsanto argues, in the alternative, that Count II, alleging fraud and misrepresentation, be dismissed pursuant to Fed.R.Civ.P. 9(b), because plaintiff failed to allege it with particularity. Rule 9(b) provides that

[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other conditions of mind of a person may be averred generally.

Fed.R.Civ.P. 9(b).

 Generally, a complaint should apprise a defendant of the time and place of

---

**2.** Monsanto argues that the October 8, 1985 press release was issued in defense of a highly critical and irresponsible *Business Week* article published one week after Monsanto acquired

Searle. Monsanto notes that it felt compelled to respond to the article, which featured extensive quotes from plaintiff's counsel, after the article caused Monsanto stock to drop 12% in one day.

the alleged fraudulent statement, the person who made the statements, and the persons to whom the statements were made. *Bennett v. Berg,* 685 F.2d 1053, 1062 (8th Cir.1982) *cert. denied sub nom. Prudential v. Bennett,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). Here, unlike the jurisdictional analysis above, the Court must disregard supporting documents and focus its analysis on whether the complaint itself outlines the particular circumstances constituting fraud or mistake.

Plaintiff, citing *Burns v. Ersek,* 591 F.Supp. 837, 842 (D.Minn.1984), argue that its pleading is sufficient to satisfy the underlying purpose of Rule 9(b) because it gives defendants "fair notice of the claims asserted against them." *Id.* at 842.

Plaintiff further argues that the Complaint refers to Monsanto and Searle collectively because "although certain acts were those of Monsanto alone, many of the actions taken by Monsanto were taken together with Searle." Plaintiff's Brief, p. 25. Finally, plaintiff argues that the "malicious silence" of Monsanto makes it impossible to plead "the time, place and contents" of the fraud with any more specificity than already provided in the complaint. For reasons stated below, this Court disagrees with each of these arguments.

■ *Burns* stands for the proposition that Rule 9(b) should be read in conjunction with Fed.R.Civ.P. 8, which calls for a short and plain statement of the facts and claims. Although the Court agrees with that proposition in principle, Rule 9(b) still requires some degree of particularity so as to allow a defendant to clearly understand the fraud charges being brought against it. Here, where plaintiff has brought fraud claims against more than one defendant, each defendant is entitled to know the particular allegations of fraud it allegedly committed. Common circumstances do not excuse a plaintiff from identifying which party allegedly perpetrated which specific acts of fraud. *See Luce v. Edelstein,* 802 F.2d 49, 54 (2nd Cir.1986); *Mechigian v. Art Capital Corp.,* 612 F.Supp. 1421 (D.C.N.Y.1985). For this reason, the Court rejects plaintiff's first two arguments.

■ Moreover, for reasons stated below, the Court must also rejects plaintiff's "malicious silence" argument. Nondisclosure does not constitute fraud unless the party is "under a legal or equitable obligation to communicate to the other, and which the other party is entitled to have communicated to him." *Richfield Bank & Trust Co. v. Sjogren,* 309 Minn. 362, 244 N.W.2d 648, 650 (Minn.1976). The "special circumstances" in which a duty to disclose attaches includes the following examples:

(a) One who speaks must say enough to prevent his words from misleading the other party.

(b) One who has special knowledge of material facts to which the other party does not have access may have a duty to disclose these facts to the other party.

(c) One who stands in a confidential or fiduciary relation to the other party to a transaction must disclose material facts.

*Id.,* 244 N.W.2d at 650.

■ Thus, while "malicious silence" is, by its very nature, difficult to plead with particularity, the Court finds that the pleading must contain, at the very least, sufficient facts to surmise that a legal or equitable duty to disclose exists. That is not the case here.

Accordingly, based on the foregoing and a review of the file and record, IT IS HEREBY ORDERED that defendant Monsanto's motion to dismiss for lack of personal jurisdiction is denied.

IT IS FURTHER ORDERED that defendant Monsanto's motion to dismiss Count II for failure to plead fraud with particularity pursuant to Fed.R.Civ.P. 9(b) is granted without prejudice.